GARCIA, J. (dissenting).
***1048 Petitioners proved that the requested accommodation-converting a window to a door and installing a ramp-would create an undue hardship. Nothing in the record-certainly no "substantial evidence"-supports the New York City Commission on Human Rights' conclusion to the contrary. Accordingly, I dissent and would affirm the order of the Appellate Division.
Petitioners' tenant is unable to enter or leave her apartment without being carried. She asked petitioners to install a wheelchair-accessible entrance to her unit, and contacted the Commission. Two Commission employees-not engineers-visited the property and, after seeing a window-to-door conversion at petitioners' management office, located in a separate building in the same apartment complex, suggested that a similar accommodation could be made for the tenant. The Commission informed petitioners after this visit that the tenant was entitled to a disability accommodation under the City Human Rights Law (Administrative Code of the City of New York § 8-101 et seq. ).
Petitioners then hired an architect, who performed a feasibility study that concluded that the construction required to implement this solution would be "quite involved" but "technically feasible." After the tenant filed a formal complaint, petitioners hired a structural engineer to examine the Commission's proposed accommodation. The structural engineer found that the accommodation would cause a "slew of structural issues" and that the building might need to be evacuated.
The Commission then issued a probable cause determination that petitioners had discriminated against the tenant by failing to provide a reasonable accommodation for her disability. A hearing was held before an ALJ, at which petitioners and the Commission presented witnesses and exhibits. Petitioners' structural engineer testified, explaining the complex installation process for the proposed ramp and the issues that would result. He also described how the ramp in the neighboring building differed *852 from that proposed for the tenant's apartment **513 because the other building had a crawl space instead of a basement, because the distance between the proposed door and sidewalk was shorter, and because there were gas lines below the tenant's apartment. The Commission relied on the opinion of its architect, on the feasibility study conducted by petitioners' architect, and on the fact of the prior accommodation at the management office building. The Commission's architect ***1049 submitted a letter stating that a "preliminary visual analysis" demonstrated that the modification appeared feasible and that the structural engineer's report on behalf of petitioners was "slightly alarmist." He drafted this opinion before visiting the site, but did not alter it after an inspection. Evidence at the hearing showed that the Commission's investigator[1] was involved in the drafting of the architect's opinion and required him to insert the sentence stating that the accommodation "appear[ed] feasible at this time based on our preliminary visual analysis."
Following the hearing, the ALJ issued a report and recommendation finding that petitioners "did not discriminate against [the tenant] by their failure to provide the [proposed accommodation], because it would create an undue hardship to do so." In the ALJ's thorough opinion, she reviewed the qualifications of the experts, the time they spent on examining the accommodation, and the materials they relied on in coming to their determinations. She fully credited the structural engineer's report and testimony on petitioners' behalf and noted that the Commission did not present the testimony of a structural engineer. She found that only petitioners' expert was qualified to assess the structural feasibility and that the Commission's inspection was cursory. With respect to the prior accommodation at the management office, she noted that there was an "utter absence of evidence on how that modification was performed," and that "[t]he supposition and speculation offered by the Commission are not evidence." Accordingly, she found that petitioners had met their burden of showing that the accommodation would pose an undue hardship.
The Commission, now in the role of decision-making authority, issued a decision and order rejecting the ALJ's report and recommendation and finding that petitioners did not prove undue hardship. The Commission held that the ALJ, "[d]espite her explicit recognition of [petitioners'] burden under the Code, and despite acknowledging [the appropriate] binding precedent, ... clearly applied a burden-shifting analysis" and improperly held that the Commission's evidence "did not effectively contradict" petitioners' expert. After using this basis to reject the ALJ's findings, the Commission found that "the expert witnesses, including [petitioners'] expert, and the architect that [petitioners] hired specifically to provide [a] feasibility ***1050 report agreed that the window-to-door conversion and ramp installation could be done " (emphasis added).[2] Next, the Commission found that petitioners "failed to rebut the inference that [the *853 tenant's] building could be modified in the same **514 manner as the management building." Although petitioners' structural engineer had presented evidence of significant differences between the tenant's building and the management office building, the Commission determined that the expert's "observations concerning the layout of the gas and electric lines beneath the management office are simply irrelevant and of no value whatever, especially in light of [petitioners'] burden to prove undue hardship." Accordingly, the Commission held that "[v]iewing the record in light of [petitioners'] affirmative and unchanging burden to prove undue hardship, as we must under the express terms of the Code, the Commission finds that [petitioners] failed to carry that burden ... [and that] the evidence in the record does not establish undue hardship." As a result, the Commission ruled that petitioners had discriminated against the tenant and were required to make the proposed modification. The Commission also imposed a "civil penalty" of $125,000.
In response, petitioners brought this proceeding challenging the Commission's determination as arbitrary and capricious, an abuse of discretion, and affected by errors of law. Supreme Court denied the petition in part, concluding that the Commission's "determination that [petitioners] did not establish the affirmative defense of undue hardship based upon structural infeasibility is supported by substantial evidence in the record." Supreme Court noted that
"[the structural engineer] testified that the proposed construction would require evacuation of the Politis apartment, as well as the adjacent apartment and two apartments above the Politises, for approximately three months. In addition, he stated that the proposed construction would require that the gas lines to the building, which provide heat, hot water and cooking gas, to be shut off. Petitioners, ***1051 however, presented no evidence of ... how such a project would impact their business of renting and managing an apartment complex " (emphasis added).
The Appellate Division reversed, insofar as appealed from by petitioners, holding that the petition "should have been granted in its entirety" because "the record did not contain any substantial evidence rebutting the petitioners' showing that it would be structurally infeasible to install a handicapped accessible entrance to [the tenant's] apartment." ( 137 A.D.3d 1284, 1286, 28 N.Y.S.3d 711 [2d Dept. 2016] ).
The Commission argues to this Court that the Appellate Division applied the "wrong standard"-forcing the Commission to "rebut" evidence when it has no such burden. It is clear, however, that despite the choice of words, the Appellate Division meant only that petitioner had met its initial burden of proving undue hardship and that no substantial evidence in the record contradicted this showing. I believe the Appellate Division was correct.
The Administrative Code of the City of New York requires that landlords make reasonable accommodations for tenants with disabilities (see Administrative Code of the City of New York § 8-107[15] ). A "reasonable accommodation" is one that "shall not cause undue hardship in the conduct of the covered entity's business. The covered entity shall have the burden of proving undue hardship" (id. § 8-102[18] ). The Commission has broad and virtually unfettered power with respect to enforcement of the City Human Rights Law, including the authority to impose civil penalties (see Administrative Code of the City of New York § 8-127), issue subpoenas (see id. § 8-105[5][a] ), and impose criminal penalties (see id. § 8-129). Indeed, *854 its already formidable statutory powers **515 are to be "construed liberally for the accomplishment of the uniquely broad" purposes of the statute. (id. § 8-130 [a] ).
A party aggrieved by a final order of the Commission can obtain judicial review, but the Commission's determination is ''conclusive if supported by substantial evidence on the record considered as a whole" (id. § 8-123[e]; see CPLR 7803[4] ). "[S]ubstantial evidence" exists "when the proof is so substantial that from it an inference of the existence of the fact found may be drawn reasonably" ( 300 Gramatan Ave. Assocs. v. State Div. of Human Rights, 45 N.Y.2d 176, 179, 408 N.Y.S.2d 54, 379 N.E.2d 1183 [1978] [internal quotation marks omitted] ). "A court reviewing the substantiality of the ***1052 evidence upon which an administrative agency has acted exercises a genuine judicial function and does not confirm a determination simply because it was made by such an agency" ( id. at 181, 408 N.Y.S.2d 54, 379 N.E.2d 1183 ).
The record demonstrates that the Appellate Division properly held that the Commission's decision was not supported by substantial evidence and that the majority's holding to the contrary is incorrect. The Commission relied on two points in rejecting the ALJ's determination and deciding that the position it advocated for in the earlier proceeding was in fact correct: first, that the experts agreed that the window-to-door conversion and ramp installation "could be done;" and second, because the management building was successfully modified in this manner, and is constructed of the same material as the tenant's building, the same conversion in the tenant's building is structurally feasible. Relying on these conclusions, the Commission found petitioners would not suffer undue hardship by providing the requested accommodation.
As to the first basis for its finding, the Commission applied an improper standard-namely, whether the accommodation "could be done." The correct inquiry is not whether the work is theoretically possible. An accommodation need not be physically impossible to cause an undue hardship, because most accommodations are theoretically possible-indeed, it is "possible" for petitioners to construct an entirely new building to accommodate the tenant. Instead, the reasonable accommodation standard requires an examination of whether the accommodation will "cause undue hardship in the conduct of the covered entity's business" ( N.Y.C Admin Code § 8-102[18] ). That all experts agreed that the work "could be done" is in no way dispositive. When the proper standard is applied, it is evident that petitioners' business, that of providing housing to its tenants, will suffer an undue hardship from this accommodation, as there is a possibility that neighbors will be displaced, that neighboring apartments will be harmed, that the building may be structurally degraded, and that gas lines could be ruptured. The Commission has conceded that such disruptions, if they were to occur, would "probably" satisfy the petitioner's burden of demonstrating undue hardship.
With respect to the Commission's second basis for its finding, the majority concludes that "substantial evidence supports the determination that petitioners did not prove that the proposed conversion would require alterations significantly different ***1053 from the previous" renovation (majority mem. at 1047, 76 N.Y.S.3d at 512, 100 N.E.3d at 851). The record does not support that conclusion. As an initial matter, a modification may be "structurally feasible" and still constitute an undue hardship. If evacuation and the other drastic steps that the structural engineer testified to *855 were necessary to make the renovation structurally feasible, then it would still **516 constitute an undue burden. To the extent the Commission was implying that modification of the other building meant that this accommodation could be done without creating undue hardship, the only structural engineer who testified, who was specifically found to be more credible than the Commission's architect by the ALJ-a credibility determination which the Commission itself accepted-found a "slew of structural issues" with the proposed accommodation. The structural engineer testified that (1) the building was made out of weak material; (2) removing one block from the wall could cause the collapse of others; (3) the work in the tenant's building would be complex and dangerous because of gas lines beneath the tenant's apartment; (4) all pieces of the relevant wall served a structural purpose; and (5) neighbors above and to the side of the tenant's apartment would need to be evacuated. In comparison, the Commission's evidence was for the most part speculative, conclusory, or otherwise qualified by the important caveat that a structural engineer would need to be consulted to assess the structural feasibility of the proposed accommodation.
Whatever petitioners' burden may be with respect to the inference that the same accommodation could be made in tenant's building without undue hardship, petitioners' structural engineer met any such burden when he testified to differences in the two work sites, including the width of the windows, the lack of gas lines below the management office, and the length of the necessary ramp.[3] In response to this evidence, the Commission deemed the structural engineer's "observations concerning the layout of the gas and electric lines beneath the management office... simply irrelevant and of no value whatever, especially in light of [petitioners'] burden to prove undue hardship." But these observations were directly relevant to the ***1054 differences between the two buildings and therefore to meeting petitioners' burden. The Commission's summary rejection of this evidence is irrational.
Judicial review of the Commission's determination is certainly limited, but is not meaningless, especially given the Commission's broad enforcement powers. "[I]n [the] final analysis, substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably-probatively and logically" ( 300 Gramatan Ave. Assocs., 45 N.Y.2d at 181, 408 N.Y.S.2d 54, 379 N.E.2d 1183 ). Petitioners here submitted substantial evidence that the accommodation would cause an undue hardship. No substantial evidence calls this proof into question. The Commission rejected an unfavorable ruling made by a neutral factfinder on the premise that the wrong standard was applied by the ALJ, and in turn applied a clearly erroneous "could be done" standard of its own, effectively making it impossible for petitioners to overcome its "burden" of demonstrating undue hardship. Affirming the Commission's determination makes clear that no accommodation, no matter how difficult, costly, and *856 **517 disruptive, will constitute an undue hardship. I dissent.
Order reversed, with costs, and judgment of Supreme Court, Queens County, reinstated, in a memorandum.
Chief Judge DiFiore and Judges Stein, Fahey and Wilson concur; Judge Garcia dissents and votes to affirm in an opinion in which Judge Feinman concurs. Judge Rivera took no part.

The investigator was neither a structural engineer nor an architect; he held a degree in sociology.

The majority's statement that petitioners' architect proposed this conversion as a "feasible reasonable accommodation" is incorrect (majority mem. at 1047, 76 N.Y.S.3d at 512, 100 N.E.3d at 851). Petitioners' architect testified that he used "feasible" in his report only to respond to the "specific question" asked, namely "is there a place to build a ramp, ... and is there a place where we can get into the apartment," and deferred to the expertise of a structural engineer for the other issues.

These differences explain why "[n]o evidence was presented that this prior window-to-door conversion had imposed any hardship on petitioners" (majority mem. at 1047, 76 N.Y.S.3d at 512, 100 N.E.3d at 851). Petitioners do not assert that the prior conversion imposed an undue hardship; instead their position is that because of the differences between the two buildings, the conversion in the tenant's building is more structurally complex and will impose an undue hardship.